**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

HERMAN VICTOR,

                              Plaintiff,

        v.                                                      No. 03-CV-1294
                                                                    (FJS/DRH)

M.D. RAELENE MILICEVIC and RICHARD C.
LAUX, Physicians Assistant,[1]

                              Defendants.


_____

**APPEARANCES:**                              **OF COUNSEL:**

HERMAN VICTOR
Plaintiff Pro Se
No. 97-A-3953
Franklin Correctional Facility
Post Office Box 10
Malone, New York 12953

HON. ANDREW M. CUOMO                      MEGAN M. BROWN, ESQ.
Attorney General for the                  Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER[2]**

        Plaintiff pro se Herman Victor ("Victor"), an inmate in the custody of the New York

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C.

_____

        [1] John Burge was also named as a defendant in the complaint.  Compl. (Docket No.
1).  On February 17, 2005, Burge was dismissed from this action.  See Docket No. 29.
        [2] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

§ 1983 alleging that defendants, two DOCS employees, violated his constitutional rights under the First and Eighth Amendments.[3]  See Compl. (Docket No. 1).  Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket No. 77. Victor opposes the motion.  Docket No. 80.  For the following reasons, it is recommended that defendants' motion be granted.


## I. Background

The facts are presented in the light most favorable to Victor as the non-moving party. See Ertman v. United States, 165 F. 3d 204, 206 (2d Cir. 1999).

From September 1, 1999 through March 19, 2002, Victor was incarcerated at Eastern Correctional Facility ("Eastern").  See Brown Decl. (Docket No. 77) at Ex. A.  During this time, Victor contends that defendant Milicevic, a physician, was deliberately indifferent to his serious medical needs.  See Compl. at ¶¶ 1-4, 20-24.  On May 10, 2002, Victor was transferred to Auburn Correctional Facility ("Auburn") and remained there until April 3, 2003. See Brown Decl. at Ex. A.  While at Auburn, Victor contends that defendant Laux, a physicians assistant, denied his requests for a liver biopsy and to be "housed on the flats." See Compl. at ¶ 7.  On May 19, 2002, Victor filed a grievance requesting that, inter alia, he be moved to the flats and scheduled for a liver biopsy.  See Brown Decl., Ex. C at 3; see also Compl. at ¶¶ 7-8.  However, Victor withdrew his grievance prior to the May 31, 2002 hearing before the Inmate Grievance Resolution Committee ("IGRC") because "the matter raised in

---

[3] Victor's Fourteenth Amendment claims were previously dismissed.  See Docket No. 29.

2

his grievance . . . has been resolved." <u>See</u> Brown Decl., Ex. C at 1.  On June 13, 2002,

Victor again filed a grievance regarding his failure to be placed on the flats.  <u>See</u> <u>id.</u> at 7.  On

June 25, 2002, the IGRC granted Victor's request "to the extent that [Victor] should be getting

moved on, or about; 6-26-02 to the flats."  <u>See</u> <u>id.</u> at 4.  Victor contends that in response to

his filing of grievances, Laux retaliated against him by waiting ten months to schedule a liver

biopsy.  <u>See</u> Compl. at ¶¶ 9, 24.  This action followed.


## II. Discussion

Victor asserts two causes of action alleging that defendants were deliberately

indifferent to his serious medical needs.  <u>See</u> Compl. at ¶¶ 20-24.  Victor also contends that

Laux retaliated against him for filing a grievance.  <u>See</u> <u>id.</u> at ¶ 9.  Defendants seek judgment

on all claims.


### A. Standard

A motion for summary judgment may be granted if there is no genuine issue as to any

material fact if supported by affidavits or other suitable evidence and the moving party is

entitled to judgment as a matter of law. The moving party has the burden to show the

absence of disputed material facts by informing the court of portions of pleadings,

depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v.</u>

<u>Catrett</u>, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the

case as determined by substantive law.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248

(1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).  When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Id.; see also Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

## B. Eighth Amendment

Victor contends that defendants were deliberately indifferent to his serious medical needs.

A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  More than negligence is required "but less than conduct undertaken for the very purpose of causing

4

harm." Hathaway, 37 F.3d at 66.  The test for a § 1983 claim is twofold.  First, the prisoner

must show that there was a sufficiently serious medical need.  Chance v. Armstrong, 143

F.3d 698, 702 (2d Cir. 1998).  Second, the prisoner must show that the prison official

demonstrated deliberate indifference by having knowledge of the risk and failing to take

measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to

inmate health or safety may be found free from liability if they responded reasonably to the

risk, even if the harm ultimately was not averted."  Farmer v. Brennan, 511 U.S. 825, 844

(1994).

        A serious medical need is "'one that has been diagnosed by a physician as requiring

treatment, or one that is so obvious that even a layperson would easily recognize the

necessity for a doctor's attention.'"  Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)

(quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)).  An impairment that a

reasonable doctor or patient would find important and worthy to treat, a medical condition

that affects the daily activities of an individual, or the existence of chronic and substantial

pain are all factors that are relevant in the consideration of whether a medical condition was

serious.  Chance, 143 F.3d at 702-03.

        Deliberate indifference requires the prisoner to prove that the prison official knew of

and disregarded the prisoner's serious medical needs.  Id. at 702.  Mere disagreement over

proper treatment does not create a constitutional claim as long as the treatment was

adequate.  Id. at 703.  Allegations of negligence or malpractice do not constitute deliberate

indifference unless the malpractice involved culpable recklessness.  Hathaway v. Coughlin,

99 F.3d 550, 553 (2d Cir. 1996).  Here, it is unclear whether Victor's condition constituted a

5

serious medical need.  However, even if Victor's condition is considered serious, his Eighth

Amendment claim fails to show that defendants were deliberately indifferent.

### 1. Dr. Milicevic

Victor contends that Dr. Milicevic disregarded his complaints of pain after he fell in

February 2000.  See Victor Dep. (Brown Decl., Ex. D) at 8-11.  Victor also contends that Dr.

Milicevic discontinued his physical therapy after a single appointment and failed to order an

MRI of his back.  See id. at 12-13, 16-17.

Here, Victor's contention that Dr. Milicevic was deliberately indifferent to his serious

medical needs is without merit.  Victor contends that on or about February 25, 2002, he was

injured after falling down the stairs.  See Brown Decl., Ex. B at 462-63; see also Pl. Reply

Mem. of Law (Docket No. 80) at 2.  Shortly thereafter, Dr. Milicevic examined Victor and

noted that if he continued to fall on stairs, he should change to medical keeplock status[4] or

be readmitted to the infirmary.  See Brown Decl., Ex. B at 462.  On March 3, 2000, Dr.

Milicevic again examined Victor after he returned from a neurology consultation and noted

that Victor had "slight puffiness" on the back of his left knee.  See id. at 460.  Dr. Milicevic

noted that Victor had no problems climbing the steps for recreation.  Id.  Thus, Victor has

failed to demonstrate that Dr. Milicevic failed to treat him after he fell down the stairs.

―――――――――――――――――

[4]"Keeplock is a form of . . . confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities."  Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. Comp. Codes R. & Regs. tit. 7, § 301.6 (1995).

As to Victor's contention that Dr. Milicevic discontinued his physical therapy after a single appointment, this is wholly without merit.  Victor's physical therapy was discontinued after he repeatedly refused to attend his scheduled appointments.  See id. at 485-88. Regarding Victor's contention that Dr. Milicevic failed to order an MRI of his back, Victor fails to explain in detail when he requested the MRI or any medical necessity that required it be provided.  Further, even assuming that Victor's request for an MRI was denied by Dr. Milicevic, this constitutes nothing more than a mere disagreement over the proper course of treatment.  See Nunez v. Hasty, No. Civ. 04-1282 (JG)(LB), 2006 WL 2589254, at *9-10 (E.D.N.Y. Sept. 8, 2006) (holding that the denial of an inmate's request for an MRI fails to demonstrate an Eighth Amendment violation) (citing Estelle, 429 U.S. at 107)).  Thus, Victor has failed to demonstrate that Dr. Milicevic was deliberately indifferent to his serious medical needs.

## 2. Laux

Victor contends that Laux's failure to schedule a liver biopsy for ten months constituted deliberate indifference to his serious medical needs.  See Compl. at ¶¶ 9, 24.

Victor was transferred to Auburn on May 10, 2002 and remained there until April 3, 2003.  See Brown Decl. at Ex. A.  On May 17, 2002, Laux met with Victor and discussed the possibility of a liver biopsy.  See Brown Decl., Ex. B at 407.  Shortly thereafter, Victor was seen by Dr. Bellina at Upstate Medical University ("Upstate Medical") for a hematology consultation.  See id. at 328-31.  Dr. Bellina recommended that Victor undergo a liver biopsy and be referred to gastroenterology at Upstate Medical.  Id.  Shortly thereafter, Laux

requested a consultation for Victor with gastroenterology at Upstate Medical.  <u>See</u> Brown Decl., Ex. B at 327.  However, Laux did not schedule a liver biopsy for Victor because he did not meet DOCS criteria.  <u>See</u> Brown Decl., Ex. C at 2.

On August 22, 2002, Victor was seen by Dr. Holtzapple, a gastroenterologist, who recommended that Victor not undergo a liver biopsy at that time.  <u>See</u> Brown Decl., Ex. B at 327.  However, on January 8, 2003, Dr. Holtzapple changed his earlier opinion and recommended that Victor undergo a liver biopsy.  <u>See id.</u> at 322.  On February 21, 2003, Victor underwent a liver biopsy at Upstate Medical.  <u>See id.</u> at 307, 311-13, 317.

Victor contends that the ten-month delay in receiving his liver biopsy constituted deliberate indifference.  "[A] delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces 'a conscious disregard of a substantial risk of serious harm.'"  <u>Pabon v. Wright</u>, No. Civ. 99-2196 (WHP), 2004 WL 628784, at * 8 (S.D.N.Y. Mar. 29, 2004) (citations omitted).  Here, there is no evidence that Laux consciously disregarded a substantial risk of serious harm through deliberate indifference.  Although Dr. Bellina initially recommended a liver biopsy in May 2002, Dr. Holtzapple examined Victor in August 2002 and recommended that Victor's Hepatitis C should not be treated with a liver biopsy at that time.  <u>See</u> Brown Decl., Ex. B at 327-31.  Therefore, there was disagreement among the consulting physicians about the proper course of treatment of Victor's Hepatitis C. Further, Victor's medical records clearly demonstrate that Laux continued to treat all of Victor's medical needs while incarcerated at Auburn, including requesting, <u>inter alia</u>, an Infectious Disease consultation, a lumbar sacral spine x-ray, and an MRI of his spine.  <u>See</u>

8

id. at 223-34, 270-71, 291, 321-22, 326.  Thus, Victor has failed to demonstrate that Laux was deliberately indifferent to his serious medical needs.

Defendants' motion for summary judgment on this ground should be granted.

### C. Retaliation

Victor contends that Laux waited ten months to schedule a liver biopsy in retaliation for his filing a grievance.  See Compl. at ¶ 9.

To prevail on a retaliation claim, a plaintiff must first assert that his conduct was constitutionally protected and that this conduct was a "substantial factor" that caused the adverse action against plaintiff.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  The burden then shifts to the defendant to show that by a preponderance of the evidence, the adverse action would have resulted even in the absence of the protected conduct.  Id.; see also Dawes v. Walker, 239 F.3d 489, 492 (2d. Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema, 534 U.S. 506 (2002).  Retaliation claims are actionable because the conduct may tend to chill an individual's exercise of constitutional rights. Dawes, 239 F.3d at 491.  However, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters. Id.

Here, Victor's filing of grievances was clearly an assertion of a constitutional right protected by the First Amendment.  See Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996).  Victor claims that the adverse action which resulted from this conduct was Laux's ten-month delay in scheduling a liver biopsy.  To constitute adverse action, a plaintiff must establish that the action would deter a similarly situated individual from exercising his or her

9

constitutional rights. <u>Dawes</u>, 239 F.3d at 491.  It is reasonably possible that other inmates would fail to exercise their constitutional right to file grievances for fear that their medical treatment may be delayed for an extended period of time.  However, as discussed <u>supra</u>, Victor was not denied adequate or timely medical attention.  Thus, Victor fails to demonstrate that he suffered any adverse action as a result of his filing of grievances.

Therefore, defendants' motion for summary judgment on this ground should be granted.

### D. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Aiken v. Nixon</u>, 236 F. Supp. 2d 211, 229 (N.D.N.Y. 2002), <u>aff'd</u>, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. <u>Aiken</u>, 236 F. Supp. 2d at 230.  Here, as discussed <u>supra</u>, accepting all of Victor's allegations as true, he has not shown that defendants violated his constitutional rights.

Therefore, in the alternative, defendants' motion for summary judgment on this ground should be granted.

### III.  Conclusion[5]

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Docket No. 77) be

**GRANTED** as to all claims and all defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the

foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


DATED:  September 11, 2007                                   _David R. Homer_
       Albany, New York                          United States Magistrate Judge

---

[5] Defendants also contend that any of Victor's claims which accrued prior to
October 1, 2000 are untimely.  See Defs. Mem. of Law (Docket No. 77) at 19.  However, it
is recommended herein that defendants' motion should be granted as to all of Victor's
claims on other grounds.  Thus, this argument need not be addressed.

11